IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEAF TRADING CARDS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-03200-N |
| | § | |
| THE UPPER DECK COMPANY, | § | |
| | § | |
| Defendant. | § | |

# ORDER

This Order addresses Defendant The Upper Deck Company's ("Upper Deck") motion to compel further responses to its first set of expedited discovery requests [47]. For the reasons set forth below, the Court grants in part and denies in part the motion.

## I. ORIGINS OF THE DISPUTE

This case is a dispute between two companies that produce and sell hockey trading cards. Plaintiff Leaf Trading Cards, LLC ("Leaf") alleges that Upper Deck has used its dominant market position and exclusive dealing agreements with distributors to foreclose all meaningful sales and distribution outlets for Leaf's hockey trading cards in violation of federal antitrust law. Previously, Leaf sought a temporary restraining order ("TRO") enjoining or declaring void Upper Deck's allegedly exclusive distributor agreements, which the Court denied due to Leaf's inability to demonstrate a substantial threat of irreparable injury in the absence of relief. Currently, the parties are conducting limited discovery to brief

ORDER – PAGE 1

an application for preliminary injunction. In doing so, the parties dispute whether Leaf is required to disclose certain documents Upper Deck seeks. Accordingly, now before the Court is Upper Deck's motion to compel further responses to its first set of expedited discovery requests.

## II. THE COURT GRANTS IN PART AND DENIES IN PART THE MOTION TO COMPEL

### A. The Motion to Compel Standard

The Federal Rules of Civil Procedure state that a "party seeking discovery may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B). Rule 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Id.* 26(b)(1). Courts construe relevance broadly, as a document need not, by itself, prove or disprove a claim or defense or have strong probative force or value to be relevant. *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017). Thus, a court should allow requested discovery "that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The party seeking discovery bears the initial burden to establish that the requested discovery is relevant. *See, e.g., Abraham v. Alpha Chi Omega*, 271 F.R.D. 556, 559 (N.D. Tex. 2010). Courts consider a number of factors when determining whether discovery is proportional to the needs of the case, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

ORDER – PAGE 2

A district court has wide discretion to supervise discovery. *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 n.114 (5th Cir. 1990). It may limit discovery if the requested discovery would be unreasonably cumulative or duplicative, if it could be obtained more easily from a different source, or if the burden or expense of the proposed discovery outweighs its potential benefit. FED. R. CIV. P. 26(b)(2)(C). However, after the party seeking discovery establishes relevance, the party resisting discovery has the burden to show why the requested discovery is irrelevant, overly broad, or unduly burdensome or oppressive. *See, e.g., Abraham*, 271 F.R.D. at 559.

### B. The Court Grants in Part and Denies in Part the Motion to Compel

In its motion, Upper Deck urges the Court to compel Leaf to produce documents in response to several of Upper Deck's requests for production. At issue are requests for production 6, 9, 16–19, 21, 23, 26–40, 42, and 43. For the reasons explained below, the Court grants in part and denies in part Upper Deck's motion to compel.

*1. Leaf Must Produce Documents Responsive to Request for Production 6.* – In request for production 6, Upper Deck seeks documents relating to advertisement of Leaf's products on the internet. Upper Deck argues that such documents are relevant to determining whether Leaf is, as it alleges, foreclosed from the hockey trading card market given its inability to use certain distributors. Leaf responds that Upper Deck's request is premised on the incorrect assumption that Leaf makes online sales directly to consumers, which it declares it does not. Notwithstanding whether Leaf makes direct online sales, such documents are relevant to the elements of Leaf's antitrust claims and proportional to the

needs of the case. The Court accordingly compels Leaf to produce further documents relating to advertisement of Leaf's hockey trading cards on the internet.[1]

***2. Leaf Must Produce Documents Responsive to Request for Production 9.*** – In request for production 9, Upper Deck seeks documents relating to Leaf's costs for all distribution methods it uses. Upper Deck maintains that such documents are relevant to determining whether Leaf cannot, as it claims, achieve the competitive scale and efficiencies necessary to compete in the hockey trading card market because it has been excluded from certain distributors. Leaf responds by arguing that Upper Deck's request is neither relevant nor proportional. But Upper Deck's request is indeed relevant: Leaf's claims regarding market foreclosure hinge on its costs to use other distributors, among other things. And such a request is proportional to the needs of this case. The Court thus compels Leaf to produce documents relating to Leaf's costs for all of distribution methods used for hockey trading cards.

***3. Leaf Is Not Required to Produce Further Documents Responsive to Request for Production 16.*** – In request for production 16, Upper Deck seeks documents relating to Leaf's financial performance, including: (1) financial statements, balance sheets, income statements, statements of earned surplus, and all internally or externally prepared consolidated statements relating to Leaf; (b) annual reports; (c) all internal and external reports or schedules relating to financial structure, such as reports by management

---

[1] Here and for each request for production for which the Court compels Leaf to produce responsive documents, the Court limits Leaf's production requirement to documents related to hockey trading cards, as trading cards of other sports and other hockey products are irrelevant to the forthcoming application for preliminary injunction.

consultants; (d) state and federal income tax returns; and (e) valuation of Leaf's goodwill. In response, Leaf has produced a spreadsheet containing monthly sales and profits from distributors of its hockey trading cards. Leaf contends that what it has already produced is sufficient to show the income, sales, profits, and accumulated goodwill value of its hockey trading cards and producing anything further would be overly burdensome for its sole accountant. The Court agrees. Thus, at this stage of limited discovery for its preliminary injunction application, Leaf is not required to produce further documents responsive to this request.

*4. Leaf Must Produce Documents Responsive to Request for Production 17.* – In request for production 17, Upper Deck seeks all price lists, price circulars, or price announcements for Leaf's products, including hockey trading cards. Upper Deck contends such documents are relevant to determining whether Leaf prices it hockey trading cards differently than its other products, perhaps because Leaf overpaid for its exclusive licenses with certain athletes whose likenesses appear in its hockey trading cards but not in its other products. Upper Deck does not make clear, however, why it is relevant to this action to determine whether this potential cause actually affects Leaf's hockey trading cards pricing. But, because Leaf's hockey trading cards pricing is indeed relevant to this dispute over access to distributors, Leaf must produce price lists, price circulars, and price announcements for its hockey trading cards, but not for its other products.

*5. Leaf Is Not Required to Produce Further Documents Responsive to Request for Production 18.* – In request for production 18, Upper Deck seeks Leaf's accounts receivable ledger, or equivalent documents, showing the amount and status of Leaf's accounts

ORDER – PAGE 5

receivable. In response, Leaf has produced a spreadsheet containing monthly sales and profits from distributors of its hockey trading cards. Leaf contends that what it has already produced is sufficient to show the income, sales, profits, and accumulated goodwill value of its hockey trading cards and producing anything further would be overly burdensome for its sole accountant. The Court agrees. Hence, at this stage of limited discovery for its preliminary injunction application, Leaf is not required to produce further documents responsive to this request.

*6. Leaf Is Not Required to Produce Documents Responsive to Request for Production 19.* – In request for production 19, Upper Deck seeks documents relating to Leaf's licenses or right to manufacture and sell the hockey trading cards referenced in its complaint, including any licensing agreements with relevant athletes or entities. In arguing that the documents are relevant, Upper Deck states:

> In its complaint, Leaf alleges the "Exclusive Distributorship contracts insisted upon by Upper Deck preclude Leaf from successfully penetrating the critical Canadian market, which in turn prevents Leaf from achieving the efficiencies necessary to compete in the hockey player trading card market in the United States." In essence, Leaf is claiming it cannot get exclusive contracts with hockey players because of Upper Deck's superior position in the market. As such, all contracts that Leaf has with hockey players are relevant.

Def.'s Br. in Supp. of Mot. to Compel Further Resps. 13 [48] (internal citations omitted). But the second sentence in the quoted language does not follow the first. In other words, Leaf's arguing that Upper Deck's allegedly exclusive *distribution* agreements with certain distributors have anticompetitive effects does not mean it is claiming that it cannot obtain exclusive *licensing* agreements with certain athletes. This non sequitur thus does not satisfy

ORDER – PAGE 6

Upper Deck's burden to demonstrate the relevance of the documents sought. Accordingly, Leaf is not required to produce documents responsive to this request.

***7. Leaf Must Produce Further Documents Responsive to Request for Production 21.*** – In request for production 21, Upper Deck seeks all correspondence with, purchase orders received from, and invoices sent to other companies to which Leaf has sold or attempted to sell products. Such documents are plainly relevant given Leaf's central claim that Upper Deck has foreclosed its access to distribution channels for its hockey trading cards. In response to Upper Deck's request, Leaf states that it will produce documents showing sales to several distributors and the percentage that those sales comprised of Leaf's overall sales of hockey trading cards. In its motion, however, Upper Deck explains that Leaf only produced a single spreadsheet listing annual sales through these distributors compared with total revenue, not the data underlying this summary. Because Leaf has not demonstrated that fully responding to this particular request is unproportional or overly burdensome, Leaf must produce correspondence with, purchase orders received from, and invoices sent to other companies to whom Leaf has sold or attempted to sell its hockey trading cards.

***8. Leaf Must Produce Further Documents Responsive to Request for Production 23.*** – In request for production 23, Upper Deck seeks documents and communications substantiating the damages alleged in Leaf's complaint. In response to Upper Deck's request, Leaf states that it will produce documents responsive to this request at the appropriate time. Since then, Leaf has apparently produced monthly reports of sales

and profits with respect to the distributors at issue in this case, which it claims are sufficient to allow Upper Deck to identify Leaf's damages. To the extent there are other, more detailed documents and/or communications substantiating its damages, Leaf must further produce those documents and/or communications now.

*9. Leaf Must Produce Documents Responsive to Requests for Production 26–37, but Not Requests for Production 38–40.* – In requests for production 26–40, Upper Deck seeks documents supporting various assertions Leaf made in its complaint and motion for a TRO. In response to these requests, Leaf avers that it will produce the nonprivileged documents sought at a mutually agreeable time. Yet Upper Deck has not received any documents responsive to these requests. Because these requests, which pertain to assertions Leaf has made before the Court, are obviously relevant, Leaf must produce documents responsive to requests 26–37. Leaf is not required, however, to produce documents responsive to requests 38–40 because requests 38 and 39 are irrelevant to this application for preliminary injunction and request 40 is overly broad.

*10. Leaf Is Not Required to Produce Documents Responsive to Request for Production 42.* – In request for production 42, Upper Deck seeks documents relating to Leaf's claim for attorneys' fees, including engagement letters, fee arrangements, invoices, billing statements, receipts, indemnification agreements, and insurance agreements. Though Leaf does indeed seek attorneys' fees in its complaint, it has clarified that it will not seek attorneys' fees in its forthcoming application for preliminary injunction. At this stage of limited discovery, this request is thus irrelevant. Accordingly, Leaf is not required at present to produce documents relating to its claim for attorneys' fees.

***11. Leaf Is Not Required to Produce Documents Responsive to Request for Production 43.*** – In request for production 43, Upper Deck seeks documents relating to the sale of Leaf's assets or goodwill to Upper Deck. Upper Deck explains that such documents are relevant to Leaf's allegation that Upper Deck's is engaged in anticompetitive conduct to devalue Leaf so Upper Deck can acquire Leaf's assets at a low price. Whether or not true, these allegations of Upper Deck's intent are of no matter in the forthcoming application for preliminary injunction. And in any event, Leaf has demonstrated that this request is overly broad and unduly burdensome. Leaf is thus not required to produce documents relating to the sale of Leaf's assets or goodwill to Upper Deck.

***12. Leaf Is Not Required to Produce Documents that Brian Gray Reviewed in Forming His Expert Opinions.*** – Allegedly because of Upper Deck's withholding of necessary discovery documents, Leaf previously designated its Chief Executive Officer Brian Gray as an expert. At that time, Upper Deck objected to the designation, accusing Leaf of designating Gray as an expert as a means of evading the protective order in this case. Since then, however, Leaf requested the Court to allow it to substitute Gray with a different expert. Because the Court granted that request in its motion granting in part and denying in part Leaf's motion to compel [57], Upper Deck's present request to obtain the documents Gray reviewed in forming his expert opinions is now moot. Hence, Leaf need not produce documents that Gray reviewed in forming his expert opinions.

## Conclusion

Based on the foregoing reasons, the Court grants in part and denies in part Upper Deck's motion to compel further responses to its first set of expedited discovery requests.

ORDER – PAGE 9

The Court further directs Leaf to produce the documents required by this Order by April 12, 2018.

Signed March 29, 2018.

          _____
          David C. Godbey
          United States District Judge

ORDER – PAGE 10